Community Services Management Corporation, d/b/a Options, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 30, 1984, before Judges WILLIAMS, JR., DOYLE and BLATT, sitting as a panel of three.

*John R. Kennel, II, Gibbel, Kraybill & Hess,* for petitioner.

*Thomas Brazusiak,* with him, *Howard Ulan,* Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, October 19, 1984:

The Community Services Management Corporation, d/b/a Options (petitioner) appeals here from an order of the Department of Public Welfare (Department) denying the petitioner's Request for Reconsideration and affirming the decision of the Department's Office of Hearings and Appeals. This decision had adopted the hearing officer's recommendation to dismiss the petitioner's appeal from the denial of a license for its partial hospitalization programs.

The petitioner is a proprietary corporation operating free standing partial hospitalization facilities[1] in Lancaster and Danville. Such facilities are subject to the licensing authority[2] of the Department pursuant to Sections 1001-1059 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§1001-1059, and must also comply with the standards set forth in the regulations[3] promulgated

---

[1] Partial hospitalization refers to a non-residential treatment modality providing comprehensive services on a planned, regular basis to patients with moderate to severe mental disorders who require less care than a 24 hour inpatient program, but more treatment services than are provided by outpatient programs.

[2] Department licensure is a prerequisite for a facility to receive funding from the Department for providing services for clients.

[3] 55 Pa. Code §§8300-8311 (the 8300 series), 11 Pa. B. 1031-1036 (1981), adopted January 6, 1981, set forth initially in a Notice of Proposed Rulemaking at 9 Pa. B. 1405-1411, April 28, 1979.

pursuant to the Code. In addition, the Department asserts that accreditation from the Joint Commission on Accreditation of Hospitals (JCAH)[4] is required under 55 Pa. Code §8303, 11 Pa. B. 1033.

On October 11, 1981 and December 21, 1981, the petitioner received Statements of Deficiencies from the Department, citing the Lancaster and Danville facilities for lack of JCAH accreditation, and while the programs were found otherwise in compliance with Department standards, they received only provisional six month certificates.[5] The petitioner appealed this decision, and, on April 20, 1982, a hearing was conducted by a hearing examiner, who, on April 21, 1983, filed his decision recommending that the appeal be dismissed. This recommendation was adopted in its entirety by the Office of Hearings and Appeals on May 2, 1983, and, on May 24, 1983, the petitioner's Request for Reconsideration was denied by the Department. The instant appeal followed.

The petitioner contends that the JCAH accreditation requirement is invalid because its promulgation violated the notice provisions set forth in Section 1202 of the Commonwealth Documents Law (Law), Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §1202, and further claims that it violates the petitioner's due process and equal protection rights.

Section 1202 of the Law provides that "[t]he agency text of any administrative regulation or

---

[4] A private nationwide organization which has established standards for psychiatric treatment programs. Accreditation is obtained by having the subject facility surveyed by a team of professionals (psychiatrists, psychologists, nurses, etc.) to assess compliance with the JCAH standards.

[5] Pursuant to Department regulations, a provisional certificate may only be renewed three times, as the petitioner has already done. A regular license is valid for twelve months, and may be renewed as long as the facility meets licensing requirements.

change therein as finally adopted *may contain such modifications to the proposed text . . . as do not enlarge its original purpose,* but modifications which enlarge the original purpose of a proposal . . . shall be republished . . . prior to final adoption by the agency." (Emphasis added.) It is undisputed that the accreditation requirement was not within 55 Pa. Code §8303 as it was originally published in the Notice of Proposed Rulemaking in the Pennsylvania Bulletin on April 28, 1979. The petitioner argues, therefore, that this omission precludes the validity of the regulation as finally adopted on January 6, 1981 with the JCAH requirement included. And, for a regulation to be valid, of course, it must have been promulgated in accordance with the law pertaining thereto. *Elkin v. Department of Public Welfare,* 53 Pa. Commonwealth Ct. 554, 419 A.2d 202 (1980). The issue here, therefore, is whether or not the addition of the previously omitted JCAH accreditation in the adopted regulation constitutes an "enlargement of purpose" under the Law.

The 8300 series regulations as proposed and adopted were intended to apply to all partial hospitalization facilities providing care and treatment for the mentally ill or emotionally disturbed. 11 Pa. B. 1031 (1981). The regulations detail mandatory requirements regarding a wide number of areas including, but not limited to, adequate staffing, policies and procedures for patient care, and records keeping. Inasmuch as licensure or certification has been explicitly conditioned upon compliance with the regulations, it is apparent that the purpose of the regulations is to establish standards to be met by those facilities and programs subject to the Department's authority. The petitioner has no vested right to receive funds from the Department, which may exercise its prerogative to condition receipt of the limited funds at its disposal.

We believe, therefore, that the incorporation of further substantive requirements does not alter the Department's intentions to ensure that it receives the services for which it pays. The insertion of the JCAH accreditation requirement does not serve, therefore, to "enlarge the purpose" of the regulations, which, accordingly, we must hold are valid and enforceable.

The petitioner also contends that the insertion of the JCAH requirement violates its equal protection and due process rights because the requirement discriminates against facilities operated for profit by subjecting them, but not non-profit facilities, to the accreditation requirement.

The petitioner concedes, as it must, that the appropriate standard of review with respect to its constitutional challenges is the "rational basis" test.[6] Under this standard, the classification must be sustained if it bears a rational relationship to a legitimate government interest, and " '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " *Martin v. Unemployment Compensation Board of Review*, 63 Pa. Commonwealth Ct. 629, 634, 439 A.2d 207, 209 (1982), *affirmed*, *Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 466 A.2d 107 (1983), quoting *McGowen v. Maryland*, 366 U.S. 420, 426 (1961).

Reasons for imposing the JCAH accreditation requirement on profit making facilities were presented at the proceedings held before the hearing officer in this matter, and they indicated that the requirement was intended to assure the Department that it was

---

[6] For both equal protection and substantive due process claims, the appropriate standards of review is the established rational basis test. *See Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), *appeal dismissed*, *Bucheit v. Laudenberger*, 456 U.S. 940 (1982).

getting the services for which it was paying the for-profit providers. It had been the Department's experience that these providers, unlike the non-profit providers, have an incentive to misrepresent the nature and quality of the services provided to clients, *i.e.* by tailoring diagnoses to comply with reimbursements, or by seeming to provide mandated programs and services which, however, exist only on paper.

The distinctions resulting from the Department's decision to apply the JCAH accreditation requirement only to profit making service providers appears to us to be reasonably justified. We will, accordingly, affirm the order of the Department's Office of Hearings and Appeals.

### ORDER

AND NOW, this 19th day of October, 1984, the order of the Office of Hearings and Appeals of the Department of Public Welfare in the above-captioned matter is hereby affirmed.